

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. A. Jamison, Commissioner,
State Department of Banking
Austin, Texas

Dear Mr. Jamison:

Opinion No. O-6274

Re: Authority of banks and building
and loan associations or savings and
loan associations chartered under
State laws to make the type of loans
described in the Service Men's Re-
adjustment Act of 1944.

Your request for an opinion by this department upon the
above subject-matter is as follows:

"We are at the present time receiving many in-
quiries from State banks and State chartered-sav-
ings and loan associations, making reference to the
G. I. Bill of Rights and soliciting advice as to
whether or not loans may be made to veterans as set
out in the Act without violating the provisions of
our State laws as they have to do with loans and in-
vestments. We have delayed requesting an opinion
from your office as to this subject matter until we
could receive a copy of regulations promulgated un-
der the provisions of the Act and therefore a part
of the same, since we presume that both the Act and
the regulations thereunder must be construed in rela-
tion to our own laws in determining as to whether or
not banks and savings and loan associations may law-
fully lend money to veterans under the plan outlined
in the Act.

"We presume that an answer to our inquiry will
involve a consideration of Articles 4, 7 and perhaps
Article 11 of Chapter V of the Texas Banking Code
and will involve Section 38 of the Building and Loan
Laws.

"We are enclosing herewith a copy of the Ser-
vecemen's Readjustment Act of 1944, together with a
copy of the regulations promulgated under the Act, as
made available through the office of the Veterans Ad-
ministration.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Please favor us with your advice as to
whether or not banks and State chartered Sav-
ings and loan associations may, under laws that
govern their operations, make the type of loans
described in the act to which reference is made."

Chapter V, Title III, of Public Law 346--78th Congress,
Chapter 268--2d Session, covers the type of loans embraced in your
inquiry, and the entire chapter is as follows:

"Sec. 500.(a)  Any person who shall have served
in the active military or naval service of the United
States at any time on or after September 16, 1940, and
prior to the termination of the present war and who
shall have been discharged or released therefrom un-
der conditions other than dishonorable after active
service of ninety days or more, or by reason of an in-
jury or disability incurred in service in line of duty,
shall be eligible for the benefits of this title.  Any
such veteran may apply within two years after separa-
tion from the military or naval forces, or two years
after termination of the war, to the Administrator of Veter-
ans' Affairs for the guaranty by the Administrator of
not to exceed 50 per centum of a loan or loans for any
of the purposes specified in sections 501,502 and 503:
Provided, That the aggregate amount guaranteed shall
not exceed $2,000.  If the Administrator finds that the
veteran is eligible for the benefits of this title and
that the loan applied for appears practicable, the Ad-
ministrator shall guarantee the payment of the part
thereof as set forth in this title.

"(b)  Interest for the first year on that part of
the loan guaranteed by the Administrator shall be paid
by the Administrator out of available appropriations.
No security for the guaranty of a loan shall be re-
quired except the right to be subrogated to the lien
rights of the holder of the obligation which is guaran-
teed:  Provided: That pursuant to regulations to be is-
sued by the Administrator the mortgagor and mortgagee
shall agree that before beginning foreclosure proceed-
ings for default in payment of principal or interest
due, the Administrator shall have at least thirty days'
notice with the option of bidding in the property on
foreclosure or of refinancing the loan with any other
agency or by any other means available.

"(e) Loans guaranteed by the Administrator under this title shall be payable under such terms and conditions as may be approved by the Administrator: Provided, That the liability under the guaranty, within the limitations of this title, shall decrease or increase prorata with any decrease or increase of the amount of the unpaid portion of the obligation: Provided further, That loans guaranteed by the Administrator shall bear interest at a rate not exceeding 4 per centum per annum and shall be payable in full in not more than twenty years. The Administrator is authorized and directed to guarantee loans to veterans subject to the provisions of this title on approved applications made to persons, firms, associations, and corporations and to governmental agencies and corporations, either State or Federal.

## PURCHASE OR CONSTRUCTION OF HOMES

"Sec. 501. (a) Any application made by a veteran under this title for the guaranty of a loan to be used in purchasing residential property or in constructing a dwelling on unimproved property owned by him to be occupied as his home may be approved by the Administrator of Veterans' Affairs if he finds—

"(1) that the proceeds of such loans will be used for payment for such property to be purchased or constructed by the veteran;

"(2) that the contemplated terms of payment required in any mortgage to be given in part payment of the purchase price or the construction cost bear a proper relation to the veteran's present and anticipated income and expenses; and that the nature and condition of the property is such as to be suitable for dwelling purposes; and

"(3) that the purchase price paid or to be paid by the veteran for such property or the construction cost, including the value of the unimproved lot, does not exceed the reasonable normal value thereof as determined by proper appraisal.

"(b) Any application for the guaranty of a loan under this section for the purpose of making repairs, alterations, or improvements in, or paying delinquent in-

debtedness, taxes, or special assessments on, residential property owned by the veteran and used by him as hishome, may be approved by the Administrator if he finds that the proceeds of such loan will be used for such purpose or purposes.

"(e) No first mortgage shall be ineligible for insurance under the National Housing Act, as amended, by reason of any loan guaranteed under this title, or by reason of any secondary lien upon the property involved securing such loan.

PURCHASE OF FARMS AND FARM EQUIPMENT

"Sec. 502. Any application made under this title for the guaranty of a loan to be used in purchasing any land, buildings, livestock, equipment, machinery, or implements, or in repairing, altering, or improving any buildings or equipment, to be used in farming operations conducted by the applicant, may be approved by the Administrator of Veterans' Affairs if he finds--

"(1) that the proceeds of such loan will be used in payment for real or personal property purchased or to be purchased by the veteran, or for repairing, altering, or improving any buildings or equipment, to be used in bona fide farming operations conducted by him;

"(2) that such property will be useful in and reasonably necessary for efficiently conducting such operations;

"(3) that the ability and experience of the veteran, and the nature of the proposed farming operations to be conducted by him, are such that there is a reasonable likelihood that such operations will be successful; and

"(4) that the purchase price paid or to be paid by the veteran for such property does not exceed the reasonable normal value thereof as determined by proper appraisal.

PURCHASE OF BUSINESS PROPERTY

"Sec. 503. Any application made under this title for the guaranty of a loan to be used in purchasing any

business, land, buildings, supplies, equipment, machinery, or tools, to be used by the applicant in pursuing a gainful occupation (other than farming) may be approved by the Administrator of Veterans' Affairs if he finds---

"(1) that the proceeds of such loan will be used for payment for real or personal property purchased or to be purchased by the veteran and used by him in the bona fide pursuit of such gainful occupation;

"(2) that such property will be useful in and reasonably necessary for the efficient and successful pursuit of such occupation;

"(3) that the ability and experience of the veteran, and the conditions under which he proposes to pursue such occupation, are such that there is a reasonable likelihood that he will be successful in the pursuit of such occupation; and

"(4) that the purchase price paid or to be paid by the veteran for such property does not exceed the reasonable normal value thereof as determined by proper appraisal.

"Sec. 504. The Administrator of Veterans' Affairs is authorized to promulgate such rules and regulations as are deemed necessary and appropriate for carrying out the provisions of this title, and may delegate to a subordinate employee authority to approve loans subject to the provisions of this title and the rules promulgated thereunder.

"Sec. 505. (a) The Administrator shall designate such agency or agencies, if any, as he finds equipped to determine whether the guaranty of loan should be approved under this title. In any case wherein a principal loan, for any of the purposes stated in section 501, 502, or 503, is approved by a Federal agency to be made or guaranteed or insured by it pursuant to applicable law and regulations, and the veteran is in need of a second loan to cover the remainder of the purchase price or cost, or a part thereof, the Administrator, subject otherwise to the provisions of this title, including the limitation of $2,000 on the total amount which may be guaranteed, may guarantee the full amount of the second loan: Pro-

vided, That such second loan shall not exceed 20 per centum of the purchase price or cost and that the rate of interest thereon shall not exceed that on the principal loan by more than 1 per centum: And provided further, That regulations to be promulgated jointly by the Administrator and the head of such agency may provide for servicing of both loans by such agency and for refinancing of the principal loan to include any unpaid portion of the secondary loan with accrued interest, if any, after the curtailment thereon equals twice the amount of the secondary loan.

"(b)  Any person who is found by the Administrator of Veterans' Affairs to be a veteran eligible for the benefits of this title, as provided in section 500 hereof, and who is found by the Secretary of Agriculture, by reason of his ability and experience, including training as a vocational trainee, to be likely to carry out successfully undertakings required of him under a loan which may be made under the Bankhead-Jones Farm Tenant Act, shall be eligible for the benefits of such Act to the same extent as if he were a farm tenant."

We shall first consider your inquiry as to State banking institutions.

All governmental corporations--whether purely private, or charged with a public service or otherwise--have only such powers as are conferred by the mother government either by express law or by reasonable, or necessary implication.

The most ordinary powers of banking institutions are enumerated in Article 1, Chapter II, of the Texas Banking Code of 1943, in Subdivisions (a) to (h). Those of subdivision (a), in the order of their usual importance, are:

"To receive time and demand deposits at interest or without interest; to lend money with or without security at interest; and to buy, sell and discount bonds, negotiable instruments and other evidences of indebtedness."

The one absolutely indispensable power of a bank is to lend money at interest. Without this power a bank could hardly exist.

The limitations and restrictions upon the power to lend are set forth in Articles 4, 7 and 11 of Chapter V of the Banking Code, and are as follows:

"ART. 4.   REAL ESTATE LOANS--LIMITATIONS

"No state bank shall make a loan upon security of real estate or invest its funds in obligations secured by real estate unless:

"1. The security is a first lien upon such real estate;

"2. The total balance owing upon the indebtedness secured by such lien does not exceed fifty per cent (50%) of the appraised value of such real estate, or, if such loan or obligation provides for uniform monthly, quarterly, semiannual or annual reductions of principal in such amounts as to retire forty per cent (40%) of said balance within five (5) years of the date of the bank's loan or investment, not to exceed sixty per cent (60%) of the appraised value of such real estate; and

"3. Such loan or obligation is supported by (a) either an attorney's opinion or a mortgagee's title insurance policy; (b) evidence of payment of all taxes other than taxes for the current year; (c) a written appraisal of such real estate signed by an appraiser; and (d) if the improvements situated upon such real estate constitute an appreciable portion of the security, adequate coverage insuring the interest of the bank against loss by fire and tornado. The above limitations shall not apply to a loan or obligation insured by the Federal Housing Administration, or to security taken to prevent loss on a loan or investment previously made in good faith."

"ART. 7.   LIMIT OF LIABILITY OF ANY ONE BORROWER-- EXCEPTIONS--PENALTY.

"No state bank shall permit any person or any corporation to become indebted or in any other way liable to it in an amount in excess of twenty-five per cent (25%) of its capital and certified surplus. The phrase 'indebted or in any other way liable' shall be construed to include liability as partner or otherwise. The above limitation shall not apply to the following classes of indebtedness or liability:

"1. Liability as endorser or guarantor of commercial or business paper discounted by or assigned to the bank by the actual owner thereof, who has acquired it in the ordinary course of business.

"2. Indebtedness evidenced by bills of exchange or drafts drawn against actually existing values and secured by a lien upon goods in transit with shippers' order bills of lading or comparable instruments attached.

"3. Indebtedness evidenced by notes or other paper secured by liens upon agricultural products, manufactured goods, or other chattels in storage in bonded warehouses or elevators with warehouse or elevator receipts attached, when the value of the security is not less than one hundred twenty-five per cent (125%) of the indebtedness and the bank's interest therein is adequately insured against loss, with insurance policies or certificates of insurance attached.

"4. Deposit in a reserve depositary, or a Federal Reserve Bank.

"5. Indebtedness arising out of the daily transaction of the business of any clearing house association in this State.

"6. Bonds and other legally created general obligations of the State of Texas or of any county, city, municipality or political subdivision thereof and indebtedness of the United States of America, the Reconstruction Finance Corporation or other instrumentality or agency of the United States Government.

"7. Any portion of any indebtedness which the United States Government, the Reconstruction Finance Corporation or any other agency or instrumentality of the United States Government has unconditionally agreed to purchase or has unconditionally guaranteed as to payment of both principal and interest."

"Art. 11.    SAME POWERS AS NATIONAL BANK

"Any provision of this Code to the contrary notwithstanding, any state bank may make any loan or in-

vestment which such bank could make were it operating as a national bank, and the making of such loan or investment shall not constitute a violation of any penal provision of the statutes of the State."

We are of the opinion Article 4 does not preclude the making of the class of loans being considered. We think the "loan upon security of real estate" contemplates a loan made solely upon the security of real estate--without which the loan would have been refused. Now, it can hardly be conceived that the Legislature meant to require land security of the character mentioned in Article 4 where the loan was otherwise secured in a manner satisfactory to the bank. Indeed, a bank may lend without security at all, and certainly where it is adequately secured the loan cannot be forbidden, because, forsooth, an additional real-estate security is taken. Even though such additional real-estate security as such does not meet the requirements of Article 4.

We are of the opinion further, however, that the loan limit of Article 7 does apply to the type of loans under consideration. That is to say, the total liability of the Administrator as guarantor may not exceed twenty-five per cent of the bank's capital and certified surplus. The statute says plainly that "the phrase 'indebted or in any other way liable' shall be construed to include liability as partner or otherwise."

Article 11 is not a limitation provision, but on the contrary is an enlargement of the bank's power to the wholesome end that State banks may exercise the power possessed by National banks with respect to such loans. We are advised, and so assume, that National associations are duly authorized to make the loans of Chapter V, Title III, of the Serviceman's Readjustment Act of 1944.

We therefore answer that State banking institutions have the corporate power and statutory right to make the type of loans inquired about.

With respect to building and loan associations, there are many limitations imposed upon the investment of funds in Article 881a-37 (Vernon's Codification) among which is the following:

"* * * and in other bonds, notes, certificates
and obligations, when such investments are specifical-
ly approved by the Banking Commissioner of Texas as a
proper investment for the building and loan associa-
tion seeking to make the investment."

There is also incorporated in this Section a provision
as follows:

"Any provisions of this Act to the contrary not-
withstanding, any building and loan association
which is chartered by the State of Texas and operat-
ing under the provisions of this Act may make any
loan or investment which such association could
make were it incorporated and operating as a Federal
Savings and Loan Association with its domicile in
this state. If the loan or investment hereby author-
ized is an enlargement of powers granted by this Act,
then such loans and investments may be made subject
to rules and regulations promulgated by the Banking
Commissioner of Texas."

We are not advised whether the Federal savings and
loan associations domiciled in this State have been clothed
with power to make these loans.

You are respectfully advised that if such Federal
savings and loan associations domiciled in Texas are at any
time clothed with power to make the loans, in virtue of this
last-quoted provision, our State-chartered building and loan
associations may likewise make them.

The foregoing provision, authorizing investments upon
the approval of the Banking Commissioner, was added by the 48th
Legislature at its regular session. We are unwilling, however,
to hold that this is a valid provision. It is in violation of
Article II of the Constitution, in that it constitutes an effort
upon the part of the Legislature to delegate to the Banking Com-
missioner--a member of the Executive department of the Govern-
ment--a legislative function.

The regulation of those private corporations affected
with a public interest, such as banks and building and loan asso-
ciation, is undoubtedly an exclusive legislative power. Such
power, therefore, under the Constitution above referred to, may
not be performed by any person belonging to another department
of the Government.

What amounts to an unwarranted delegation of legislative power has been the subject of frequent consideration by the courts. Panama Refining Co. v. Ryan (U.S.) 79 Law Ed. 446, is a leading case upon the question. It is there said:

"So, also, from the beginning of the Government, the Congress has conferred upon executive officers the power to make regulations, -- 'not for the Government of their departments, but for administering the laws which did govern.' United State v. Grimaud, 220 U. S. 506, 517; 55 Law Ed. 563, 567; 31 S. C. 480, Such regulations become, indeed, binding rules of conduct, but they are valid only as subordinate rules and when found to be within the framework of the policy which the Legislature has sufficiently defined. * * *. We think that Section 9(c) goes beyond those limits. As to the transportation of oil production in excess of State permission, the Congress has declared no policy, has established no standard, has laid down no rule. There is no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited.

"If Section 9(c) were held valid, it would be idle to pretend that anything would be left of limitations upon the power of the Congress to delegate its law-making function." (Emphasis ours)

Chief Justice Alexander has said:

"It is a well-established principle of constitutional law that any statute or ordinance regulating the conduct of a lawful business or industry and authorizing, the granting or withholding of licenses or permits as the designated officials arbitrarily choose, without setting forth any guide or standard to govern such officials in distinguishing between individuals entitled to such permits or licenses and those not so entitled, is unconstitutional and void." — Railroad Commission v. Shell Oil Co., 161 S. W. (2) 1022. (Emphasis ours)

Chief Justice Phillips has said:

"A further vice in the ordinance is that even with the necessary consent of the property owners

of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to guide the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the construction of the building. This leaves the right to construct the building subject to the arbitrary discretion of the inspector, and of itself renders the ordinance void. The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another." -- Spann v. City of Dallas, 235 S. W. 513. (Emphasis ours)

The power attempted to be conferred upon the Banking Commissioner is an unbridled discretion--an arbitrary one.

The Legislature--the only law-making body--has outlined no policy, has given no guide, laid no pattern, fixed no boundaries, prescribed no limitations, given no direction, outlined no purpose, but on the contrary, has abdicated entirely in favor of the Banking Commissioner the legislative power permitting that officer to say summarily whether or not a particular association may or may not invest its funds in any character of bonds, notes, certificates or obligations he chooses to approve. Notwithstanding it has seen fit to prescribe meticulously with respect to many kinds of investments, it finally makes all such legislative limitations nugatory with the omnibus power attempted to be placed in the Banking Commissioner. This is not "government by law but by men."

While this department holds, as hereinabove outlined, nevertheless its opinion is not binding upon the courts--though it is often said to be "highly persuasive"--and in view of the fact that the judicial opinions cannot be certainly forecast, -- the law seems to be in a flux--permit us to suggest that if your department deems the matter of importance to the institutions mentioned, it might be well-- and certainly would be safe--to ask the Legislature at its forthcoming session specifically to bestow the powers about which you inquire.

Honorable R. A. Jamison - page 13


Trusting that what we have said satisfactorily
answers your inquiries, we are


                              Very truly yours

                         ATTORNEY GENERAL OF TEXAS


                                    /s/
                 By
                              Ocie Speer
                              Assistant

OG:mr:wlt


APPROVED NOV 28, 1944
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS


APPROVED, OPINION COMMITTEE
BY GWB, CHAIRMAN